Global Textile All., Inc. v. TDI Worldwide, LLC, 2018 NCBC 121.

STATE OF NORTH CAROLINA

COUNTY OF GUILFORD

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
17 CVS 7304

GLOBAL TEXTILE ALLIANCE, INC.,

        Plaintiff,

      v.

TDI WORLDWIDE, LLC, DOLVEN ENTERPRISES, INC., TIMOTHY DOLAN, individually and in his capacity as an officer, shareholder and director of Dolven Enterprises, Inc. and an officer and owner of TDI Worldwide, LLC; JAMES DOLAN, individually and in his capacity as an officer, shareholder and director of Dolven Enterprises, Inc., STEVEN GRAVEN, individually and in his capacity as an officer, shareholder and director of Dolven Enterprises, Inc., RYAN GRAVEN, individually and in his capacity as an officer, shareholder and director of Dolven Enterprises, Inc., GARRETT GRAVEN, individually, GFY INDUSTRIES LIMITED, GFY, LIMITADA de CAPITAL VARIABLE, GFY COOPERATIVE, U.A., and GFY SH,

        Defendants.

**ORDER AND OPINION ON DEFENDANTS RYAN GRAVEN, DOLVEN ENTERPRISES, INC., and GFY COOPERATIVE, U.A.'s MOTION TO DISMISS SECOND AMENDED COMPLAINT**

THIS MATTER comes before the Court on Defendants Ryan Graven, Dolven Enterprises, Inc., GFY Industries Limited, GFY Limitada de Capital Variable, GFY Cooperative, U.A., and GFY SH's Motion to Dismiss Second Amended Complaint. (Defs.' Mot. Dismiss Sec. Am. Compl., ECF No. 288.) The Motion to Dismiss Second Amended Complaint seeks dismissal of Defendants on two distinct grounds: (1) under North Carolina Rule of Civil Procedure 12(b)(2), N.C. Gen. Stat. § 1A-1, Rule 12(b)(2) (hereinafter, the North Carolina Rules of Civil Procedure will be referred to as

"Rule(s)"), based on lack of personal jurisdiction over GFY Industries Limited ("GFY"), GFY, Limitada de Capital Variable ("GFY LCV"), GFY Cooperative, U.A. ("GFY Coop"), and GFY SH (collectively, "GFY Defendants"); and (2) under Rule 12(b)(6) for failure to state claims as to all Defendants. Defendants sought, and the Court granted, leave for the GFY Defendants to separately file a brief in support of their 12(b)(2) motion to dismiss for lack of personal jurisdiction ("GFY Defendants' Motion"), and for all Defendants to file a single, consolidated brief in support of their 12(b)(6) motions to dismiss.

On November 14, 2018, the Court issued its order and opinion on the GFY Defendants' Motion and granted that Motion with respect to GFY, GFY LCV, and GFY SH, dismissing those parties from the case. *Global Textile All., Inc. v. TDI Worldwide, LLC*, 2018 NCBC LEXIS 117 (N.C. Super. Ct. Nov. 14, 2018). The Court did not dismiss the claims against GFY Coop.

The Court now addresses the Rule 12(b)(6) Motion of Defendants Ryan Graven ("Ryan"), Dolven Enterprises, Inc. ("Dolven"), and GFY Coop. (collectively Ryan, Dolven, and GFY Coop are "Dolven Defendants," and the motion for determination is referred to as "Dolven Defendants' Motion").

THE COURT, having considered the Dolven Defendants' Motion, the briefs filed in support of and in opposition to the Dolven Defendants' Motion, the arguments of counsel at the hearing, and other appropriate matters of record, concludes that the Dolven Defendants' Motion should be GRANTED, in part, and DENIED, in part, in the manner and for the reasons set forth below.

*Hagan Barrett & Langley PLLC, by J. Alexander S. Barrett and Kurt A. Seeber for Plaintiff Global Textile Alliance, Inc.*

*K&L Gates LLP, by A. Lee Hogewood III, John R. Gardner, and Matthew T. Houston for Defendants Dolven Enterprises, Inc., Ryan Graven, and GFY Cooperative, U.A.*

*Morningstar Law Group, by Shannon R. Joseph and Jeffrey L. Roether for Defendant Garrett Graven.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, LLP, by Eric M. David, Brian C. Fork, and Shepard D. O'Connell for Defendant James Dolan.*

*James, McElroy & Diehl, P.A., by Fred B. Monroe and Jennifer M. Houti for Defendants TDI Worldwide, LLC and Timothy Dolan.*

*Ellis & Winters LLP, by Jonathan A. Berkelhammer, Steven A. Scoggan, and Scottie Forbes Lee for Defendant Steven Graven.*

McGuire, Judge.

## I.      FACTS AND PROCEDURAL BACKGROUND

1.      The facts relevant to determination of the Dolven Defendants' Motion are drawn from the Second Amended Complaint.  ("SAC", ECF No. 261.)

*A. Parties Relevant to the Motion*

2.      Plaintiff Global Textile Alliance, Inc. ("Plaintiff") is a North Carolina corporation with its principal place of business in Rockingham County, North Carolina.  Plaintiff is in the business of providing fabrics, mattress ticking, covers, and other textiles to the bedding, upholstery, and home furnishings industries. (ECF No. 261, at ¶ 1.)

3.      Plaintiff was founded in 2001 by Luc Tack ("Tack"), a Belgian Entrepreneur, and Defendants Timothy Dolan ("Timothy") and Steven Graven

("Steven"), "for the purpose of providing fabric sourcing alternatives to furniture and bedding manufacturers in the United States." (*Id.* at ¶¶ 20–21.) Tack provided the funding to start Plaintiff, and Timothy incorporated Plaintiff and transferred all of its shares to Tack in the fall of 2001. (*Id.* at ¶ 21.) Since that time, Tack has been the sole shareholder of Plaintiff. (*Id.*) Until April 2016, Timothy served as Plaintiff's CEO and as a director, and Steven served as Plaintiff's Executive Vice President and as a director. (*Id.* at ¶¶ 4, 6.) Timothy, Steven, and Tack made up the Plaintiff's three person Board of Directors. (*Id.* at ¶ 23.)

4. Defendant Ryan is the son of Steven and a former employee of Plaintiff. (*Id.* at ¶ 7.) Ryan served as the legal representative and head operating manager of Plaintiff's operations in China. (*Id.* at ¶ 7.)

5. Defendant Dolven is a North Carolina corporation with its principal place of business in North Carolina. (*Id.* at ¶ 3.) Dolven is owned in equal twenty-five percent shares by Timothy, Steven, Ryan, and James Dolan ("James"). (*Id.*) Dolven is engaged in the business of sourcing fabrics, cutting and sewing fabrics, and providing other services in the bedding and fabric industries in direct competition with Plaintiff. (*Id.*)

6. Defendant GFY Coop was formed in the Netherlands. (*Id.* at ¶ 11.) GFY Coop is managed and controlled by Dolven. (*Id.*)

*B. Plaintiff's Business and Ryan's Role with Plaintiff's Asia Operations*

7. Plaintiff uses third-party vendors to provide certain products and services integral to its manufacturing of its products. Plaintiff contracts with third-

party fabric mills to manufacture some of its fabrics. Plaintiff also contracts with "cut-and-sew" operations to further process the fabric that Plaintiff manufactures into final products for its customers. The third-party fabric mills and cut-and-sew operations are located primarily in China. Plaintiff uses an "extremely selective" process to identify qualified third parties, a process that requires significant amounts of time and money. (*Id.* at ¶ 29.)

8.　In or around 2005, Plaintiff hired Ryan to set up an office in China and to oversee all of Plaintiff's business within Asia. (*Id.* at ¶¶ 34–35.) Plaintiff initially did its sourcing in China through a Wholly Owned Foreign Enterprise ("WOFE") named Paradise, which is owned by Tack. (*Id.* at ¶ 36.) In 2010, Plaintiff created Guanteng ("GTA Asia"), another WOFE, to conduct business on its behalf in Asia. (*Id.* at ¶ 36.) Ryan was named Director of GTA Asia and served as the legal representative of GTA Asia. (*Id.*) Through GTA Asia, Plaintiff invested "significant amounts of time and money" to identify, select, and develop relationships with Chinese vendors capable of providing high-quality, reliable products and services for Plaintiff. (*Id.* at ¶¶ 40–41.)

9.　During his time in China, Ryan's responsibilities included identifying qualified and reliable Chinese fabric mills and cut-and-sew vendors for Plaintiff and overseeing the vendors' work for Plaintiff. (*Id.* at ¶ 35.) In his role as Director of GTA Asia, Ryan was entrusted to represent the legal interests of GTA Asia, had the power to enter binding contracts on behalf of GTA Asia, had control over GTA Asia's cash and capital, and had the power to set pricing and payment terms for goods sold and

purchased by Plaintiff and GTA Asia. (*Id.* at ¶ 37.) The only supervisor Ryan reported to in carrying out his duties was Timothy. (*Id.*) Plaintiff alleges "[t]he effect of setting up GTA Asia, with [ ] Ryan [ ] in charge and reporting only to Timothy [ ], was to remove the trading activities done for GTA from Paradise and place them under the direct management and control of [ ]Ryan Graven and Timothy [ ]." (*Id.*)

10. Ryan worked on Plaintiff's behalf in Asia until 2012, when Ryan's brother, Garrett Graven ("Garrett"), replaced Ryan as Director of GTA Asia. (*Id.* at ¶ 38.) Ryan, however, maintained employment with Plaintiff and continued overseeing various individuals who filled the role of legal representative and Director of GTA Asia. (*Id.*)

### C. GFY, Dolven, GFY LCV, GFY Coop, and GFY Shanghai Created to Divert Corporate Opportunities from Plaintiff to Defendants

11. Through his position with Plaintiff, Ryan gained extensive and detailed knowledge about all aspects of Plaintiff's Asia operations and about the capabilities of Plaintiff's vendors. (*Id.* at ¶ 44.) Plaintiff alleges that Defendants leveraged this knowledge to form GFY Defendants to compete with and usurp business opportunities from Plaintiff. (*Id.* at ¶¶ 125–132.)

12. On or about May 4, 2009, Timothy, Steven, Ryan, and James founded GFY, a Chinese company, using Plaintiff's offices, employees, capital, and other assets. (*Id.* at ¶ 48.) Ryan stated that GFY was founded to "manage the sourcing, quality and servicing of [cut-and-sew] products." (*Id.* at ¶ 50.) Steven stated that the creation of GFY was facilitated by "experiences [Ryan] gained in China" and that GFY was created for the purpose of having one company "manage cut-and sew

facilities, operations, logistics, quality control, and product in-flow and out[-]flow." (*Id.*)

13. GFY "went into direct competition" with Plaintiff. (*Id.* at ¶ 51.) GFY purchased fabric from Plaintiff, which GFY would then send to third-party cut-and-sew vendors in China to make products for Plaintiff's customers. (*Id.* at ¶ 65.) Plaintiff alleges that "[t]here was no reason that [Plaintiff] could not have directly sourced its fabrics to the third-party cut and sew operators, as it had done for many years." (*Id.*) Timothy, Steven, Ryan and James did not disclose the creation of, or their ownership interests in, GFY to Tack. (*Id.* at ¶ 68.)

14. In August of 2013, Timothy, Steven, Ryan, and James created Dolven. (*Id.* at ¶ 77.) Dolven "is engaged in sourcing fabrics, cutting and sewing of fabrics, and providing other services in the bedding and fabric industries." (*Id.* at ¶ 3.) Dolven owns, manages, and controls GFY. (*Id.* at ¶ 9.) Plaintiff alleges that Dolven was created using Plaintiff's resources to divert business from Plaintiff to Dolven. (*Id.* at ¶ 77.)

15. Plaintiff further alleges that Timothy, Steven, Ryan, and James created GFY LCV, GFY SH, and GFY Coop in early 2014 to facilitate the diversion of corporate opportunities by Dolven away from GTA. (*Id.* at ¶ 82.)

16. Plaintiff alleges that "[a]ll of the business conducted by Dolven and [GFY Defendants] was business which [Plaintiff] was able, willing and qualified to conduct and would have conducted had Defendants not diverted the opportunities to do so to themselves." (*Id.*)

17.     Plaintiff alleges Timothy, Steven, Ryan, and Garrett used their employment with Plaintiff and Plaintiff's resources to benefit the business interests of Dolven and the GFY Defendants without disclosing to Plaintiff their ownership interests in Dolven or the GFY Defendants. (*Id.* at ¶¶ 84–92.) For instance, Plaintiff alleges that Timothy, Steven, Ryan, and Garett gave preferential pricing and treatment to Dolven and the GFY Defendants in transactions with Plaintiff, and usurped opportunities belonging to Plaintiff and gave them to Dolven and the GFY Defendants. (*Id.* at ¶¶ 85–99.) As a result of this alleged misconduct, Plaintiff claims it has suffered damage to its relationships with its customers and suppliers and has lost business opportunities, which rightfully belonged to it. (*Id.* at ¶¶ 98, 103.)

*D. Relevant Procedural History*

18.     On April 11, 2018, Plaintiff filed the SAC. In the SAC, Plaintiff makes the following claims against Dolven Defendants: actual and constructive fraud (Third Claim for Relief); common law unfair competition/business conversion (Sixth Claim for Relief); unfair or deceptive trade practices in violation of the North Carolina Unfair Trade Practices Act, N.C. Gen. Stat. § 75-1.1 ("UDTPA") (hereinafter, the North Carolina General Statutes will be referred to as "G.S.") (Seventh Claim for Relief); constructive trust (Tenth Claim for Relief); fraudulent transfer under G.S. § 39-23.1, *et seq.* (Eleventh Claim for Relief); and a motion for preliminary and permanent injunction (Twelfth Claim for Relief). Plaintiff also brings the following claims against Ryan, only: conspiracy (Fourth Claim for Relief); breach of fiduciary

and other duties (Eighth Claim for Relief); and disgorgement of compensation during periods of faithlessness (Ninth Claim for Relief).

19. On May 14, 2018, the Dolven Defendants filed the Dolven Defendants' Motion and a brief in support of the Motion. (Br. Supp. Dolven Defs. Mot, ECF No. 290.) Plaintiff filed its brief in opposition to the Dolven Defendants' Motion on June 5, 2018. (ECF No. 315.) The Dolven Defendants filed their reply brief on June 18, 2018. (ECF No. 325.) The Court held a hearing on the Dolven Defendants' Motion, and it is now ripe for resolution.

## II. ANALYSIS

### A. Standard of Review

20. In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court's inquiry is "whether, as a matter of law, the allegations of the [C]omplaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). North Carolina is a notice pleading state. *See, e.g., Feltman v. City of Wilson*, 238 N.C. App. 246, 252, 767 S.E.2d 615, 620 (2014) (quoting *Wake Cty. v. Hotels.com, L.P.*, 235 N.C. App. 633, 646, 762 S.E.2d 477, 486 (2014)). "Under notice pleading, a statement of claim is adequate if it gives sufficient notice of the claim asserted to enable the adverse party to answer and prepare for

trial, to allow for the application of the doctrine of res judicata, and to show the type of case brought." *Id.*

21.     Dismissal of a claim pursuant to Rule 12(b)(6) is proper "(1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint reveals on its face the absence of fact sufficient to make a good claim; [or] (3) when some fact disclosed in the complaint necessarily defeats the plaintiff's claim." *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985). In deciding a motion to dismiss, the Court must construe the Complaint liberally and accept all well-pleaded allegations as true. *Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009). The Court, however, is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005) (citations and quotations omitted).

### B. The SAC Alleges Facts Sufficient to Give Rise to an Agency Relationship between Ryan and Dolven and Ryan and GFY Coop

22.     Although the parties have not argued the issue, the Court believes it is necessary at the outset of its analysis to discuss the potential basis for liability with respect to Plaintiff's claims against Dolven and GFY Coop. While Plaintiff does not expressly allege in the SAC that Ryan or the other individual Defendants were acting as "agents" of Dolven or GFY Coop, Plaintiff appears to contend that Dolven and GFY Coop are vicariously liable for actions of Ryan, and other individual Defendants, because they were acting as agents for Dolven or the GFY Defendants. For example,

Plaintiff argues that "[a]ll of Ryan's fraudulent conduct was for and on behalf of [Dolven and GFY Coop], and renders [them] liable for the fraud," and cites case law involving agency law in support. (ECF No. 315, at p. 220 n. 7.)

23. On the other hand, Plaintiff does not allege or argue that Dolven or GFY Coop participated in alleged fraudulent conduct by acting through their boards of directors, or otherwise engaging in corporate acts, or that they had corporate policies that caused or contributed to the wrongful conduct. *See, e.g., Everhart v. O'Charley's, Inc.*, 200 N.C. App. 142, 153, 683 S.E.2d 728, 737 (2009) (stating that the direct liability of a corporation may be based on "the corporation's acts or policies"); *Draughon v. Harnett County Bd. of Educ.*, 166 N.C. App. 464, 468–70, 602 S.E.2d 721, 725–26 (2004) (finding that the plaintiff's complaint failed to allege a basis for direct liability against defendant Harnett County Board of Education where the complaint did not allege any specific wrongful conduct of the Board, and only alleged wrongful conduct by individual board members); *Patel v. Sunvest Realty Corp.*, 2018 Del. Super. LEXIS 441, *20-21 (Del. Super. Ct. Oct. 15, 2018) (holding that while plaintiff alleged a basis for vicarious liability of the corporate defendants, he failed to state a direct claim for fraud against corporate defendants where the plaintiff did not allege the corporate defendants "committed fraud through any conduct" other than through their agents' conduct).

24. Nevertheless, in the corporate context, directors, officers, and employees who transact business on behalf of the corporate principal are considered agents of the corporation. *See Tillery Envtl. LLC v. A&D Holdings, Inc.*, 2018 NCBC LEXIS

13, at *42–43 (N.C. Super Ct. Feb. 9, 2018) ("It is . . . axiomatic that a corporation, having no body, voice, or other means of interacting with the corporeal world, must rely on agents . . . to transact its business–typically directors, officers, and employees." (citing *Braswell v. United States*, 487 U.S. 99, 110 (1988))).  Critically, corporate defendants can be held vicariously liable "for the torts of [their] agent which are committed within the scope of the agent's [actual or apparent] authority[.]" *Phillips v. Rest. Mgmt. of Carolina, L.P.*, 146 N.C. App. 203, 216, 552 S.E.2d 686, 695 (2001); *Norburn v. Mackie*, 262 N.C. 16, 23, 136 S.E.2d 279, 284–85 (1964) ("[A] principal is responsible to third parties for injuries resulting from the fraud of his agent committed during the existence of the agency and within the scope of the agent's actual or apparent authority from the principal . . . .").

25.    Here, based on the allegations in the SAC, the Court concludes that Plaintiff has sufficiently alleged that Ryan was an agent of Dolven and GFY Coop. The SAC alleges that Ryan is the President and CEO of Dolven.  (ECF No. 261, at ¶ 7.)   The SAC also alleges GFY Coop is owned 99% by Dolven, controlled and managed by Dolven, that Ryan was a founder of GFY Coop, and that Ryan conducted business on behalf of Dolven and GFY Coop.  (*Id.* at ¶¶ 82, 84, 95.)  With respect to the business Ryan conducted for Dolven and GFY Coop, the SAC states that Ryan, "while employed by [Plaintiff] as the head manager of Plaintiff's China operations, was contemporaneously working on and for his own interests and the interests of [Dolven and GFY Coop] in arranging for and conducting business for and through [Dolven and GFY Coop]."  (*Id.* at ¶ 95.)  The SAC also indicates that Ryan used his

position with Plaintiff "to cultivate relationships with customers, vendors, and suppliers . . . for Dolven [and GFY Coop]." (*Id.* at ¶ 84.)

26. Based on the above, there can be no question that Ryan, as President and CEO, is an agent of Dolven. *See Zimmerman v. Hogg & Allen, Prof'l Assoc.,* 286 N.C. at 32, 209 S.E.2d at 800 (1974). Further, the Court finds the SAC's allegations— that GFY Coop is managed and controlled by Dolven and that Ryan engaged in corporate transactions on GFY Coop's behalf—sufficient to state an agency relationship between Ryan and GFY Coop. The Court need not, and does not, address at this time whether Ryan or any other individual Defendants' actions would give rise to "direct" liability by Dolven or GFY Coop.

27. Therefore, for purposes of this Motion, the Court will treat Ryan as an agent of Dolven and GFY Coop. And, because Plaintiff relies on vicarious liability, the Court will focus its analysis primarily on Plaintiff's claims against Ryan. If Plaintiff's claims against Ryan survive dismissal and the SAC supports a finding that Ryan was acting as an agent of Dolven and GFY Coop when he committed the underlying acts, than Plaintiff's claims against GFY Coop and Dolven also survive.

### C. Breach of Fiduciary Duty and Constructive Fraud

28. Plaintiff brings a claim for breach of fiduciary duty against Ryan, (ECF No. 261, at ¶¶ 156–60), and claims for constructive fraud against Ryan, Dolven and GFY Coop. (*Id.* at ¶¶ 125–32.) The Dolven Defendants argue that Plaintiff's claims for breach of fiduciary duty and constructive fraud must fail because Ryan's employment with Plaintiff did not give rise to a fiduciary relationship and because

his employment was with GTA Asia, a separate legal entity from Plaintiff, and cannot form the basis of a fiduciary relationship with Plaintiff. (ECF No. 290, at pp. 11–13.) The Dolven Defendants also argue that the constructive fraud claims against Dolven and GFY Coop fail because Plaintiff has not alleged facts supporting the existence of a fiduciary relationship between itself and Dolven or GFY Coop. (*Id.* at pp. 17–19.)

29. Preliminarily, the Court is unpersuaded by the Dolven Defendants' argument that Ryan was employed by GTA Asia and therefore couldn't owe a fiduciary duty to Plaintiff. The Dolven Defendants contend only that there are several allegations in the SAC that suggest Ryan was employed by GTA Asia. (*Id.* at p. 12.) However, the SAC also alleges that Ryan was "employed by [Plaintiff] as the legal representative and head operating manager of [Plaintiff]'s operations in China." (ECF No. 261, at ¶ 7.) Plaintiff alleges that Ryan has admitted in a sworn affidavit that his job was "was also to '[o]versee all aspects of [Plaintiff's] business with [sic] the Asia corridor.'" (*Id.* at ¶ 35.) The Court concludes that the allegations in the SAC do not conclusively establish that Ryan was employed solely by GTA Asia and that he could not owe a fiduciary duty to Plaintiff.

30. To establish a claim for breach of fiduciary duty, a plaintiff must show: "(1) the existence of a fiduciary relationship; (2) a breach of that duty; and (3) the breach proximately caused plaintiff's injury." *BDM Invs. v. Lenhil, Inc.*, 2014 NCBC LEXIS 6, at \*23 (N.C. Super. Ct. Mar. 20, 2014). In contrast, to plead a claim for constructive fraud, a plaintiff must allege a breach of a fiduciary duty and allege that the defendant benefited himself as a result of the breach. *White v. Consol. Planning,*

*Inc.*, 166 N.C. App. 283, 294, 603 S.E.2d 147, 156 (2004) ("The primary difference between pleading a claim for constructive fraud and one for breach of fiduciary duty is the constructive fraud requirement that the defendant benefit himself."); *Crumley & Assocs., P.C. v. Charles Peed & Assocs., P.A.*, 219 N.C. App. 615, 620, 730 S.E.2d 763, 767 (2012) ("To establish constructive fraud, a plaintiff must show that defendant (1) owes plaintiff a fiduciary duty; (2) breached this fiduciary duty; and (3) sought to benefit himself in the transaction."). Additionally, a claim of constructive fraud must be pled with particularity. *Terry v. Terry*, 302 N.C. 77, 85, 273 S.E.2d 674, 679 (1981). The particularity requirement is satisfied by "alleging facts and circumstances (1) which created the relation of trust and confidence, and (2) [which] led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff." *Id.* (citation and quotation marks omitted).

31. Because both claims require the existence of a fiduciary relationship, the Court begins its analysis there. A fiduciary relationship arises when "there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence[.]" *Dalton v. Camp*, 353 N.C. 647, 651–52, 548 S.E.2d 704, 707 (2001) (quoting *Abbitt v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931)) (internal quotation marks omitted). Such a relationship "extends to any possible case in which a fiduciary relationship exists in fact, and in which there is confidence reposed in one side, and

resulting domination and influence on the other." *Id.* at 652, 548 S.E.2d at 707–08 (quoting *Abbitt*, 201 N.C. at 598, 160 S.E. at 906).

32. In the employment context, the mere existence of an employer-employee relationship is insufficient to give rise to a fiduciary duty. *See Id.* at 652, 548 S.E.2d at 708 (quoting *King v. Atl. Coast Line R.R. Co.*, 157 N.C. 44, 62–63, 72 S.E. 801, 808 (1911)) ("Under the general rule, 'the relation of employer and employee is not one of those regarded as confidential.'"). In fact, "where an employee is neither an officer nor a director, extraordinary circumstances are necessary to impose a fiduciary duty arising out of the employment relationship." *Southeast Air Charter, Inc. v. Stroud*, 2015 NCBC LEXIS 82, at *16 (N.C. Super. Ct. Aug. 17, 2015) (citing *Dalton*, 353 N.C. at 652, 548 S.E.2d at 708). These "extraordinary circumstances" occur when an employer is "subjugated to the improper influences or domination of his employee." *Dalton*, 353 N.C. at 652, 548 S.E.2d at 708; *see also DSM Dyneema, LLC v. Thagard*, 2015 NCBC LEXIS 50, at *21–22 (N.C. Super. Ct. May 12, 2015) (holding that the plaintiff failed to allege "the extraordinary or special type of employer-employee relationship that gives rise to a fiduciary duty" because the facts pleaded did not "allege that Thagard enjoyed the sort of domination or influence over DSM that our courts have found necessary to create a fiduciary duty"). For example, the special circumstance of a fiduciary relationship can arise "'when [the employee] figuratively holds all the cards—all the financial power or technical information.'" *Crumley & Assocs., P.C. v. Charles Peed & Assocs., P.A.*, 219 N.C. App. 615, 621, 730 S.E.2d 763,

767 (2012) (quoting *Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 348 (4th Cir. 1998)).

33. The Court first concludes that Plaintiff pleads facts that support the allegation that Ryan had a fiduciary relationship with Plaintiff. North Carolina recognizes that a fiduciary duty can arise via an agency relationship where an employee is "appointed by his [employer] primarily to bring about business relations between the [employer] and third persons." *Sara Lee Corp. v. Carter*, 129 N.C. App. 464, 470, 500 S.E.2d 732, 736 (1998) (citation and quotations omitted), *rev'd in part on other grounds*, 351 N.C. 27, 519 S.E.2d 308 (1999). Where such a relationship exists, "the agent or employee is bound to the exercise of utmost good faith, loyalty, and honesty toward his principal or employer." *Id.* If the agent acts unfaithfully by, for example, engaging in undisclosed self-dealing with his employer, a breach of fiduciary duty can result. *Id.* at 470–71, 500 S.E.2d 736–37; *see also Estate of Graham v. Morrison*, 168 N.C. App. 63, 68–69, 607 S.E.2d 395, 299–300 (2005) (discussing the duties an agent owes to its principal and noting that the agent is prohibited from engaging in self-dealing). Plaintiff alleges that it sent Ryan to China to find and nurture relationships with third-parties to supply Plaintiff with fabric and cut-and-sew services. Plaintiff further alleges that Ryan then used the knowledge he gained through establishing these relationships to create competing companies and usurp and divert Plaintiff's opportunities to himself.

34. In addition, Plaintiff alleges that Ryan oversaw all of Plaintiff's business within the Asia market and had vast control over Plaintiff's Asia operation. (ECF

No. 261 at ¶¶ 34–35.) Ryan was entrusted by Plaintiff to carry out its sourcing in China through GTA Asia. Ryan identified appropriate Chinese vendors with which to do business, managed the quality of fabric sourced to Plaintiff, and managed logistics and customer service for Plaintiff. (*Id.* at ¶ 34.) Through his work for Plaintiff, Ryan acquired detailed information about "the particular [Chinese] mills and cut and sew operations which had certain capabilities to do particular things correctly, reliably and consistently." (*Id.* at ¶ 44.) Ryan also controlled GTA Asia's "cash and capital", entered binding contracts on behalf of GTA Asia, set the pricing and payment terms for goods purchased and to and from Plaintiff and GTA Asia, and represented the legal interests of GTA Asia. (*Id.* at ¶¶ 35–37.) Ryan reported only to Timothy in carrying out these duties. Even after leaving his role as director of GTA Asia, Ryan continued to provide oversight to GTA Asia's operations. (*Id.* at ¶ 38.) The allegations support a claim that Plaintiff vested Ryan with significant authority and that Ryan gained unique knowledge of, and had control over, technical and financial information on which Plaintiff became dependent. *See Lazenby v. Godwin*, 40 N.C. App. 487, 494–95, 253 S.E.2d 489, 493 (1979) (concluding that the plaintiffs, who were co-directors of a corporation with defendant, presented sufficient evidence of a fiduciary relationship because defendant was the primary manager of the corporation and the plaintiffs placed their trust in defendant's business skill and judgment); *Austin v. Regal Inv. Advisors, LLC*, 2018 NCBC LEXIS 3, at * 20–21 (N.C. Super. Ct. Jan. 8, 2018) (concluding that the plaintiffs' breach of fiduciary duty claim survived a 12(b)(6) motion to dismiss where the plaintiffs alleged that they granted

the defendants significant discretion to manage their investments and relied on the financial expertise of defendants). These allegations can be read to support the theory that Ryan's control over Plaintiff's Asia operations might have given rise to an exceptional circumstance where Plaintiff was "subjugated to the improper influences or domination of [Ryan]." *Dalton*, 353 N.C. at 652, 548 S.E.2d at 708.[1]

35. Plaintiff also sufficiently alleges the remaining elements of a claim for breach of fiduciary duty and constructive fraud. Plaintiff alleges the facts and circumstances that created the relationship of trust and confidence between Plaintiff and Ryan and which led up to and surrounded Ryan taking advantage of Plaintiff. *Terry*, 302 N.C. at 85, 273 S.E.2d at 679. For example, Plaintiff alleges that Plaintiff trusted Ryan to manage Plaintiff's Asia operations and that, while employed by Plaintiff, Ryan created entities that compete with Plaintiff. (*Id.* at ¶¶ 7, 34–38, 47–62, 77–84.) Plaintiff alleges Ryan abused his fiduciary duty by usurping corporate opportunities from Plaintiff and taking them for the benefit of himself, Dolven, and the GFY Defendants. (*Id.* at ¶ 95–99.) Plaintiff further alleges that Ryan failed to disclose his interests in Dolven and the GFY Defendants and gave special deals to Dolven and the GFY Defendants in transactions with Plaintiff, to the detriment of Plaintiff. (*Id.* at ¶ 85–99.) Based on these allegations, Plaintiff's SAC states a cause of action for breach of fiduciary duty and constructive fraud against Ryan.

---

[1] In *Global Textile Alliance, Inc. v. TDI Worldwide, LLC*, 2018 NCBC LEXIS 104 (N.C. Super. Ct. Oct. 9, 2018), the Court found that Garrett, who succeeded Ryan as Director of GTA Asia, did not have a fiduciary relationship with Plaintiff. *Id.* at *15–16. The Court finds that the allegations in the SAC regarding Ryan's knowledge of GTA Asia's operations, and his authority and independence, establish that Ryan had a much broader role and more authority over Plaintiff's Asia operation than his successor Garrett.

36.     Therefore, Dolven Defendants' motion to dismiss Plaintiff's claims for breach of fiduciary duty and constructive fraud against Ryan should be DENIED. Additionally, because Ryan's alleged fraudulent conduct was taken to further the business of Dolven and GFY Coop, and benefitted them, the Court concludes Plaintiff has sufficiently alleged that Ryan's alleged fraud was made within the scope of his agency relationship with Dolven and GFY Coop. Thus, the Dolven Defendants' motion to dismiss the constructive fraud claims against Dolven and GFY Coop should be DENIED to the extent Plaintiff's seek to hold them vicariously liable.

*D. Actual Fraud*

37.     Plaintiff alleges claims of actual fraud against Ryan, Dolven, and GFY Coop. (*Id.* at ¶¶ 125–132.) The Dolven Defendants argue that Plaintiff failed to plead its fraud claim with the requisite particularity because Plaintiff did not allege the "time, place, or substance of any purported misrepresentation or concealment by Defendants, or make any *specific* allegation as to what Defendants gained." (ECF No. 290, at pp. 17–18.) Plaintiff argues that its pleadings satisfy the particularity requirements and are sufficient to survive dismissal.

38.     To state a claim for actual fraud a plaintiff must plead the following elements: "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Terry*, 302 N.C. at 83, 273 S.E.2d at 677 (citations and quotations omitted). If a claim of fraud is based on concealment of a material fact, the plaintiff must also allege that the party committing the fraud had

a duty to speak. *Griffin v. Wheeler-Leonard & Co.*, 290 N.C. 185, 198, 225 S.E.2d 557, 565 (1976); *Lawrence v. UMLIC-Five Corp.*, 2007 NCBC LEXIS 20, at *8 (N.C. Super. Ct. June 18, 2007). A duty to speak and disclose a material fact arises where

> (1) a fiduciary relationship exists between the parties to the transaction; (2) there is no fiduciary duty and one party has taken affirmative steps to conceal material facts from the other; and (3) there is no fiduciary relationship and one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through reasonable diligence.

*Hardin v. KCS Int'l, Inc.*, 199 N.C. App. 687, 696, 682 S.E.2d 726, 733 (2009) (internal citations and quotations omitted).

39. Additionally, claims for fraud must be pled with particularity. *Terry*, 302 N.C. at 84, 273 S.E.2d at 678. In the case of claims based on fraudulent concealment, the particularity requirement is satisfied if a plaintiff alleges

> (1) the relationship [between plaintiff and defendant] giving rise to the duty to speak; (2) the event or events triggering the duty to speak and/or the general time period over which the relationship arose and the fraudulent conduct occurred; (3) the general content of the information that was withheld and the reason for its materiality; (4) the identity of those under a duty who failed to make such disclosures; (5) what [the defendant] gained by withholding information; (6) why plaintiff's reliance on the omission was both reasonable and detrimental; and (7) the damages proximately flowing from such reliance.

*McKee v. James*, 2013 NCBC LEXIS 33, at * 22–23 (N.C. Super. Ct. July 24, 2013) (quoting *Lawrence v. UMLIC-Five Corp.*, 2007 NCBC LEXIS 20, at *9 (N.C. Super. Ct. June 18, 2007).

40.     The Court concludes that Plaintiff's allegations meet the particularity requirements for fraudulent concealment and sufficiently allege a claim of actual fraud against Ryan.  The Court has concluded that Plaintiff has alleged a fiduciary relationship between Ryan and Plaintiff, which Plaintiff contends placed on Ryan a duty to speak.  Plaintiff alleges that the fraudulent concealment of these facts by Ryan allowed Ryan and other employees of Plaintiff to give preferential treatment to entities they owned or operated in transactions with Plaintiff, and that Ryan, Dolven, and GFY Coop gained "tens of millions of dollars of revenues" from conflict of interest transactions, which revenues should have inured to the benefit of Plaintiff.  (*Id.* at ¶¶ 63–71, 85–99, 132.)  Plaintiff also has alleged "the general period over which the relationship arose and the fraudulent conduct occurred."  *McKee*, 2013 NCBC LEXIS 33 at *22–23.  These allegations meet the particularity requirements of *McKee* and are sufficient to state a claim for actual fraud against Ryan.  *See Id.*

41.     Therefore, the Dolven Defendants' motion to dismiss Plaintiff's claim for actual fraud should be DENIED.  Additionally, Plaintiff sufficiently alleges that Ryan's fraudulent conduct was in furtherance of the business of Dolven and GFY Coop and as their agent.  Therefore, the Dolven Defendants' motion to dismiss Plaintiff's claim for actual fraud should also be DENIED.

*E.  Civil Conspiracy*

42.     Plaintiff brings a claim of civil conspiracy against Ryan and alleges that Ryan committed civil conspiracy by "agree[ing] to cooperate and act" with the other individual Defendants "to carry out the scheme to divert business from [Plaintiff]."

(ECF No. 261, at ¶ 134.) Ryan argues that Plaintiff's allegation of conspiracy fails to state a claim because Plaintiff's conclusory allegations do not allege when, where, or how Ryan conspired against Plaintiff. (ECF No. 290, at pp. 20–21.)

43. In North Carolina, civil conspiracy is not an independent cause of action. Rather, liability for civil conspiracy must be alleged in conjunction with an underlying claim for unlawful conduct. *Toomer v. Garrett*, 155 N.C. App. 462, 483, 574 S.E.2d 76, 92 (2002). To state a claim for civil conspiracy, a plaintiff must allege: "(1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." *Piraino Bros., LLC v. Atlantic Fin. Grp., Inc.*, 211 N.C. App. 343, 350, 712 S.E.2d 328, 333 (2011) (citations and quotations omitted).

44. Plaintiff has pleaded sufficient facts to support a claim that Ryan and the other individual Defendants agreed to create Dolven and the GFY Defendants for the unlawful purpose of diverting business and corporate opportunities from Plaintiff to themselves. The allegation places the Dolven Defendants on notice as to who was involved in the conspiracy, when the conspiracy occurred, and the purpose of the conspiracy. Furthermore, the Court already has decided that Plaintiff's tort claims for actual and constructive fraud survive dismissal. *See Am. Air Filter Co. v. Price*, 2017 NCBC LEXIS 55, at *32 (N.C. Super. Ct. June 26, 2017) (concluding that defendants' motion to dismiss a conspiracy claim should be denied where plaintiff's tort claims for misappropriation of trade secrets and unfair trade practices survived

dismissal and plaintiff sufficiently alleged the existence of a conspiracy). Therefore, the Dolven Defendants' motion to dismiss Plaintiff's conspiracy claim should be DENIED.

### F. Unfair or Deceptive Trade Practices

45. Plaintiff claims that all Defendants committed unfair or deceptive trade practices in violation of the UDTPA. (ECF No. 261, at ¶¶ 150–55.) Plaintiff does not specifically state what actions by Defendants constitute unfair or deceptive trade practices, but pleads that "Defendants' acts and omissions as alleged [in the SAC] constitute unfair [or] deceptive trade acts or practices." (*Id.* at ¶ 152.) The Dolven Defendants argue that Plaintiff fails to state a claim for violation of the UDTPA because the allegations are conclusory in nature and fail to allege the Dolven Defendants' actions were in or affecting commerce in North Carolina. (ECF No. 290, at p. 9.)

46. To allege a violation of the UDTPA, a plaintiff must allege that "(1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Dalton*, 353 N.C. at 656, 548 S.E.2d at 711. An act or practice is considered unfair when it is offensive to public policy or when it is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Walker v. Fleetwood Homes of N.C., Inc.*, 362 N.C. 63, 72, 653 S.E.2d 393, 399 (2007) (citations and quotations omitted). An act or practice is considered deceptive if it has the capacity or tendency to deceive. *Id.* Additionally, where a defendant engages in self-

dealing with his North Carolina employer and companies owned by defendant, those transactions are in or affecting commerce. *Sara Lee Corp. v. Carter*, 351 N.C. 27, 32–33, 519 S.E.2d 308, 311–12 (1999).

47.     As discussed herein, the SAC contains extensive allegations detailing Ryan's unfair and deceptive conduct towards Plaintiff, including breaches of fiduciary duties and fraud arising from withholding material information from Plaintiff regarding Dolven and the GFY Defendants. Plaintiffs also allege that Ryan took actions from and in North Carolina, as the agent for and on behalf of Dolven and GFY Coop, which were in commerce, and injured Plaintiff. Therefore, the Dolven Defendants' motion to dismiss Plaintiff's claim for unfair or deceptive trade practices should be DENIED.

*G. Common Law Unfair Competition/Business Conversion*

48.     Plaintiff also claims that the Dolven Defendants engaged in common law unfair competition and business conversion. (ECF No. 261, at ¶¶ 144–49.) Plaintiff alleges that the Dolven Defendants engaged in unfair and unethical conduct "designed to handicap [Plaintiff]" and "to misappropriate [Plaintiff]'s commercial competitive advantage obtained through years of time, money and labor." (*Id*. at ¶ 145.) Plaintiff further claims the Dolven Defendants "converted [Plaintiff]'s business and Trade Secrets." (*Id*. at ¶ 144.) Ryan argues that Plaintiff has failed to state a claim because (1) claims for business conversion and conversion of trade secrets do not apply to intangible interests such as business opportunities and

expectancy interests; and (2) Plaintiff fails to support its allegation that Ryan competed with Plaintiff. (ECF No. 290, at pp. 6–7.)

49. A claim for unfair competition seeks to protect "a business from misappropriation of its commercial advantage earned through organization, skill, labor, and money." *Henderson v. U.S. Fid. & Guar. Co.*, 346 N.C. 741, 749, 488 S.E.2d 234, 240 (1997). Conversion is the "unauthorized assumption and exercise of the right of ownership over the goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *White*, 166 N.C. App. at 309, 603 S.E.2d at 165 (citations and quotations omitted). With respect to intangible property, such as electronic information, a claim of conversion requires that the plaintiff be deprived of the information on which it bases its claim. *See RoundPoint Mortg. Co. v. Florez*, 2016 NCBC LEXIS 18, at *55 (N.C. Super. Ct. Feb. 18, 2016) (dismissing plaintiff's conversion claim where plaintiff failed to show that it" ha[d] been deprived of possession or use of the information on which it base[d] its conversion claim")

50. Plaintiff's claims for common law unfair competition and business conversion are each based on allegations that the Defendants diverted Plaintiff's business to, and used Plaintiff's trade secrets for the benefit of, Dolven and the GFY Defendants. Accordingly, the Court construes Plaintiff's claims for common law unfair competition and business conversion as a single claim. *See Superior Performers, Inc. v. Meaike*, No. 1:13CV1149, 2014 U.S. Dist. LEXIS 158862, at *26 (M.D.N.C. Nov. 10, 2014) ("The allegations of wrongdoing, however, as to both

Plaintiff's claim for unfair competition and business conversion are the same. Therefore, the court will address the torts for unfair competition and business conversion together.").

51.    Courts recognize that a claim for common law unfair competition is analyzed the same way as a claim for unfair or deceptive trade practices under G.S. § 75-1.1. *See BellSouth Corp. v. White Directory Publishers, Inc.*, 42 F. Supp. 2d 598, 615 (M.D.N.C. 1999) ("The standard which a plaintiff must meet to recover on an unfair competition claim under the common law is not appreciably different [from a claim for unfair or deceptive trade practices].");  *Blue Rhino Global Sourcing, Inc. v. Well Traveled Imports, Inc.*, 888 F. Supp. 2d 718, 721 n.1 (M.D.N.C. 2012); *Global Textile All., Inc., LLC*, 2018 NCBC LEXIS 57, at *20–21.

52.    The Court has determined that the claim for unfair or deceptive trade practices against the Dolven Defendants survives dismissal to the extent it is based on Ryan's alleged fraud, and concluded that the alleged fraud was in furtherance of the diversion of business and opportunities from Plaintiff to Dolven and GFY Coop. Therefore, to the extent Plaintiff's claim for unfair competition is based on Ryan's alleged fraudulent conduct, the allegations support the claim for unfair competition and business conversion and the claim is not subject to dismissal by the Dolven Defendants at this stage.

53.    To the extent Plaintiff claims that the Dolven Defendants converted Plaintiff's trade secrets, however, Plaintiff has failed to allege a claim for conversion. Plaintiff based its trade secret conversion claim on intangible information, but fails

to allege that it has been deprived of the use or access of its trade secret information. *See RoundPoint Mortg. Co.*, 2016 NCBC LEXIS 18, at \*55.

54. In conclusion, to the extent the Dolven Defendants seek dismissal of Plaintiff's claims for common law unfair competition and business conversion based on the Dolven Defendants' alleged diversion of Plaintiff's business, it should be DENIED. But, to the extent the Motion seeks dismissal of Plaintiff's claims for common law unfair competition and business conversion based on the Dolven Defendants' alleged conversion of Plaintiff's trade secrets, it should be GRANTED.

*H. Fraudulent Transfer*

55. Plaintiff also brings a claim of fraudulent transfer under the Uniform Voidable Transactions Act ("UVTA"), G.S. § 39-23.1, *et seq.,* against the Dolven Defendants. Plaintiff alleges that it is a creditor of Ryan, Dolven, and GFY Coop because it has claims against them in this lawsuit. (ECF No. 261, at ¶ 168.) According to Plaintiff, "in an attempt to defraud, hinder, and delay Plaintiff . . . from having a full and lawful recovery" from Defendants, Timothy, Steven, and James agreed upon terms for the sale of their shares in Dolven to Ryan. (ECF No. 261, at ¶¶ 168–69.) Plaintiff admits that Defendants have yet to complete the transaction, but argues that the obligation to complete the transaction has been incurred and is effective. (*Id.* at ¶ 168.) The Dolven Defendants argue the fraudulent transfer claim should be dismissed because Plaintiff has failed to demonstrate either that: (1) a transfer has occurred; (2) the transfer would be *by* Defendants; (3) Defendants failed

to obtain reasonable value; or (4) that Plaintiff is a creditor under the UVTA. (ECF No. 290, at p. 15.)

56. Under § 39-23.4(a)(1) of the UVTA, "[a] transfer made or obligation incurred by a debtor is voidable as to a creditor . . . if the debtor made the transfer or incurred the obligation: (1)[w]ith intent to hinder, delay, or defraud any creditor of the debtor[.]" Among the factors courts may consider in determining intent under § 39-23.4(a)(1), are whether: the obligation incurred was to an insider; the obligation was disclosed or concealed; or before the obligation was incurred, the debtor had been sued or threatened with suit. G.S. § 39-23.4(b).

57. The UVTA defines a creditor as "[a] person that has a claim[;]" a debtor as "[a] person that is liable on a claim[;]" and a claim as "a right to payment, whether or not the right is reduced to judgment, . . . contingent, disputed, [or] legal." G.S. § 39-23.1(3)–(4), (6). Furthermore, the official comment to G.S. § 39-23.1 states that "the holder of an unliquidated tort claim or a contingent claim may be a creditor protected by this act." G.S. § 39-23.1, cmt. 4 (2014).

58. Here, Plaintiff has stated that it is a creditor of Ryan, because it has contingent claims against Ryan in this lawsuit; that Ryan incurred an obligation to purchase Timothy's, Steven's, and James' shares in Dolven after this suit was initiated; and that such obligation was incurred to hinder and delay Plaintiff from receiving a full recovery in this lawsuit. (ECF No. 261, at ¶¶ 168–70.) These allegations are sufficient to state a claim for fraudulent transfer against Ryan. (ECF No. 261, at ¶¶ 168–70.) The allegations, however, are insufficient with respect to

Dolven and GFY Coop, who were not parties to the alleged transfer/obligation and against whom Plaintiff has no remedy under the UVTA. *See* G.S. § 39-23.7.[2]

59. First, Plaintiff is a creditor of Ryan by virtue of the claims it has brought against him in this action. *See* G.S. § 39-23.1, cmt. 4 (2014). Next, to the extent § 39-23.4(a)(1) requires a "transfer," the Court determined in an earlier motion in this matter that an allegation that Defendants incurred an obligation to transfer is sufficient to plead that a "transfer" occurred. *Global Textile All., Inc. v. TDI Worldwide, LLC*, 2018 NCBC LEXIS 57, at \*28–29 (N.C. Super. Ct. June 5, 2018). Additionally, § 39-23.4(a)(1) does not require the plaintiff to prove that the defendant failed to obtain reasonable value. Whether or not the debtor received reasonable value for the obligation incurred is only a factor in determining whether the obligation was incurred with intent to hinder, delay, or defraud the creditor. G.S. § 39-23.4(b). Lastly, the allegations clearly allege that the obligation to purchase shares of Dolven was incurred by Ryan.

60. Therefore, the Dolven Defendants' motion to dismiss Plaintiff's fraudulent transfer claims against Dolven and GFY Coop should be GRANTED, but the Dolven Defendants' motion to dismiss Plaintiff's fraudulent transfer claim against Ryan should be DENIED.

---

[2] As the name suggests, relief under the Uniform Voidable Transfer Act is available only when a debtor engages in a transaction or incurs an obligation that the Act recognizes as voidable. Neither Dolven nor GFY Coop were parties to the transaction/obligation as alleged by Plaintiff and relief against them is unavailable.

*I. Constructive Trust*

61.     Plaintiff alleges that it is entitled to the equitable remedy of a constructive trust "with respect to all money and other property received by" Ryan, Dolven, GFY Coop and the other Defendants as a result of their "unlawful conduct." (ECF No. 261, at ¶ 165.)   The Dolven Defendants argue that Plaintiff's claim for constructive trust should be denied because (1) the underlying claims fail as a matter of law and (2) Plaintiff has failed to show that Dolven or GFY Coop owed a duty or had a confidential relationship with Plaintiff.

62.     A "claim" for a constructive trust is an equitable remedy used to prevent unjust enrichment acquired through "fraud, breach of duty or some other circumstance making it inequitable for [defendant] to retain [the property]." *Wilson v. Crab Orchard Dev. Co.*, 276 N.C. 198, 211, 171 S.E.2d 873, 882 (1970).   A constructive trust typically arises "out of the existence of fraud, actual or presumptive – usually involving the violation of a confidential or fiduciary relation – in view of which equity transfers the beneficial title to some person other than the holder of the legal title." *Leatherman v. Leatherman*, 297 N.C. 618, 621–22, 256 S.E.2d 793, 795–96 (1979) (quoting *Bowen v. Darden*, 241 N.C. 11, 13–14, 84 S.E.2d 289, 292 (1954)). A fiduciary relationship is not required, however, as a claim of constructive trust can be based on other circumstances which make a defendant's retention of the property at issue inequitable.  *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 530–31, 723 S.E.2d 744, 752 (2012).

63. The SAC sufficiently alleges the existence of a fiduciary relationship between Ryan and Plaintiff. Additionally, Plaintiff alleges that Ryan is a shareholder and has an ownership interest in Dolven and GFY Coop. (ECF No. 261, at ¶¶ 77, 82, 168.) Plaintiff also alleges that Ryan fraudulently concealed his interest in these companies and diverted business or corporate opportunities from Plaintiff to Dolven and GFY Coop, (*Id.* at ¶¶ 77–99), and that Ryan, Dolven, and GFY Coop benefitted as a result. (*Id.* at ¶ 127.) Based on these allegations, Plaintiff has alleged that Ryan, Dolven, and GFY Coop wrongfully obtained title to property belonging to Plaintiff. Therefore, Plaintiff has alleged a basis for imposing a constructive trust over Ryan, Dolven, and GFY Coop, and Defendants' motion to dismiss Plaintiff's claim for a constructive trust against Ryan, Dolven, and GFY Coop should be DENIED.

*J. Disgorgement of compensation*

64. Plaintiff asserts a claim titled "Disgorgement of Compensation During Periods of Faithlessness" against Ryan. (ECF No. 261, at ¶¶ 161–63.) Plaintiff alleges that Ryan was paid a "substantial salary and compensation" while he was "diverting business from [Plaintiff] . . . and engaging in conflicts of interest transactions." (*Id.* at ¶ 162.) Plaintiff claims that, "[i]n equity and good conscience," Ryan should be compelled to disgorge the compensation and benefits he received during the period in which he allegedly violated his duties owed to Plaintiff. (*Id.* at ¶ 163.)

65. As with a constructive trust, a request for "disgorgement of compensation" would be considered a remedy and not a cause of action. *See Sara Lee*

*Corp. v. Carter*, 129 N.C. App. 464, 472, 500 S.E.2d 732, 737 (1998) (allowing an employer to recover as damages compensation and benefits paid to an employee while the employee was breaching his fiduciary duty). The remedy is based on the principle that an agent is not entitled to compensation when he breaches his fiduciary duty and is disloyal to his principal. *Id.*

66. The Court has already determined that Plaintiff sufficiently alleged a claim of breach of fiduciary duty against Ryan, and that Ryan diverted business from Plaintiff and engaged in conflict of interest transactions with Plaintiff. These allegations also support Plaintiff's request for the remedy of disgorgement of compensation. Therefore, the Dolven Defendants' motion to dismiss Plaintiff's claim for disgorgement of compensation should be DENIED.

*K. Motion for Permanent Injunction*

67. Plaintiff's Twelfth Claim for Relief is styled as a "Motion for Preliminary and Permanent Injunction." (ECF No. 261, at ¶¶ 172–73.) The Court previously denied Plaintiff's motion for preliminary injunction as to all Defendants. *Global Textile All., Inc. v. TDI Worldwide, LLC*, 2017 NCBC LEXIS 108 (N.C. Super. Ct. Nov. 21, 2017). The Dolven Defendants argue that Plaintiff's claim for permanent injunction should fail because the underlying claims fail and because equitable relief is inappropriate. (ECF No. 290, at pp. 21–22.)

68. Since certain of Plaintiff's claims against the Dolven Defendants survive dismissal and might provide a basis for a permanent injunction, the Court will not at this time dismiss the claim for a permanent injunction against them. The

Dolven Defendants' motion to dismiss Plaintiff's claim for permanent injunction should be DENIED.

Therefore, it is ORDERED that:

1. The Dolven Defendants' motions to dismiss Plaintiff's claims against Ryan for breach of fiduciary duty, actual fraud, constructive fraud, unfair or deceptive trade practices, civil conspiracy, fraudulent transfer, constructive trust, disgorgement of compensation, and permanent injunction are DENIED.

2. The Dolven Defendants' motion to dismiss Plaintiff's claim against Ryan for unfair competition/business conversion is DENIED to the extent the motion seeks dismissal based on Ryan's alleged fraudulent conduct, and GRANTED to the extent it seeks dismissal of Plaintiff's claim for common law unfair competition/business conversion based on Ryan's alleged conversion of Plaintiff's trade secrets.

3. The Dolven Defendants' motions to dismiss Plaintiff's claims against Dolven and GFY Coop for actual fraud, constructive fraud, unfair or deceptive trade practices, constructive trust, and permanent injunction are DENIED.

4. The Dolven Defendants' motion to dismiss Plaintiff's claim against Dolven and GFY Coop for unfair competition/business conversion is DENIED to the extent the motion seeks dismissal based on Ryan's alleged fraudulent conduct, and GRANTED to the extent it seeks dismissal of Plaintiff's claim

for common law unfair competition/business conversion based on Ryan's alleged conversion of Plaintiff's trade secrets.

5. The Dolven Defendants' motion to dismiss Plaintiff's claims against Dolven and GFY Coop for fraudulent transfer is GRANTED.

SO ORDERED, this the 29th day of November, 2018.


        /s/ Gregory P. McGuire        
Gregory P. McGuire
Special Superior Court Judge for
Complex Business Cases